**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3532-16T2

DANIEL LYNCH,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
POLICE AND FIREMEN'S
RETIREMENT SYSTEM,

     Respondent-Respondent.

_____

          Submitted January 28, 2019 – Decided February 8, 2019

          Before Judges Messano and Rose.

          On appeal from the Board of Trustees of the Police and Firemen's Retirement System, Department of the Treasury, PFRS No. 3-10-46413.

          Alterman & Associates, LLC, attorneys for appellant (Stuart J. Alterman, on the briefs).

          Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Juliana C. DeAngelis, Deputy Attorney General, on the brief).

PER CURIAM

Petitioner Daniel Lynch appeals from a March 14, 2017 final decision of the Board of Trustees (Board) of the Police and Firemen's Retirement System (PFRS), denying his application for accidental disability retirement (ADR) benefits pursuant to N.J.S.A. 43:16A-7. We affirm.

I.

In July 2012, petitioner applied for ADR benefits, claiming he suffers from post-traumatic stress disorder (PTSD) and panic attacks following an incident that occurred during the course of his employment as a police officer. In sum, on October 16, 2011 at approximately 11:45 p.m., petitioner responded to a call that a suspect was naked, armed "with some sort of BB gun[,]" and throwing objects over his apartment's balcony. The suspect "ha[d] been acting strange[ly] for hours." During the course of his arrest, another officer shot the suspect in the foot. Neither petitioner nor the other officer was physically injured during the incident.

The Board denied petitioner's application for ADR benefits, determining "the event that caused [his] disability claim [was] not undesigned and unexpected." The Board further found

> no evidence that the event was objectively capable of causing a reasonable person in similar circumstances to

> suffer a disabling mental injury; as [his injury] did not result from "direct personal experience of a terrifying or horror-inducing event that involved actual or threatened death or serious injury, or a similarly serious threat to the physical integrity of the member or another person."

Instead, the Board granted petitioner ordinary disability retirement benefits. N.J.S.A. 43:16A-6.

Thereafter, petitioner filed an administrative appeal and the matter was transmitted to the Office of Administrative Law as a contested case. Petitioner was the only witness to testify at the hearing. An Administrative Law Judge (ALJ) also considered documentary evidence, including petitioner's application for disability retirement, his job description, his hand-drawn diagram of the incident,[1] and police reports.

The facts adduced at the hearing before the ALJ are essentially undisputed. At the time of the incident, petitioner was employed as a police officer with the Belmar Police Department for approximately ten years. When petitioner and Officer Ryan Nolan knocked on the suspect's door, identifying themselves as police, the suspect responded, "Do you know you have a [.]45 [caliber weapon] pointed at your head?" The officers then drew their weapons

---

[1] The diagram was not admitted in evidence.

and stepped away from the door. When "[n]othing happened[,]" the officers knocked again. Petitioner heard what sounded like "a semi[-]automatic handgun being racked." In response, the officers backed away from the door: petitioner moved toward the nearby stairway; and Nolan moved toward the opposite end of the hallway.

Thereafter, the suspect opened the door, and pointed a gun at petitioner. Because Nolan was in petitioner's line of fire, petitioner did not fire his weapon. Instead, petitioner jumped into the stairwell to avoid being shot, and to afford Nolan the opportunity to take clear aim at the suspect. When Nolan fired his weapon, the bullet ricocheted off the wall where petitioner had been standing and struck the suspect in the foot. Petitioner claimed he would have been hit by the projectile had he not moved into the stairwell. The suspect's weapon was not loaded, and petitioner did not fire his weapon during the exchange.

The October 2011 incident was petitioner's first involvement in a shooting. He had drawn his service weapon during one prior incident, but had never fired it. Petitioner's only experience discharging his firearm was during his police training, which was limited to shooting paper targets.

The ALJ issued a written initial decision finding petitioner was entitled to receive ADR benefits. Referencing petitioner's lack of experience in

4

"situation[s] where [he had to] tak[e] action to protect himself and his partner from [an] armed and seemingly dangerous" suspect, the ALJ concluded "the encounter developed into something entirely undesigned and unexpected." Citing the test set forth by our Supreme Court in Patterson v. Board of Trustees, State Police Retirement System, 194 N.J. 29, 33 (2008), the ALJ further determined petitioner demonstrated he "had a 'direct personal experience of a terrifying or horror-inducing event that involve[d] actual or threatened death or serious injury, or a similarly serious threat to the physical integrity of [petitioner] or another person.'" Accordingly, the ALJ recommended that petitioner was entitled to an ADR pension. Thereafter the Board submitted to the Division of Pension and Benefits written exceptions to the ALJ's decision, and petitioner submitted his responses.

Although the Board accepted the ALJ's factual findings, it rejected the ALJ's legal conclusion. Specifically, the Board determined petitioner did not meet the Patterson standard, finding the mere "discharge of Nolan's gun and ricochet of the bullet" was not a sufficient physical threat to render the event terrifying. Further, petitioner did not fire his weapon, and was "not in the line of fire." The Board distinguished the incident from the examples set forth in Patterson, such as a "permanently mentally disabled policeman who sees his

5

partner shot; a teacher who is held hostage by a student; and a government lawyer used as a shield by a defendant." Patterson, 194 N.J. at 50. The Board also noted that "[petitioner's] injury was unlike the traumatic injury suffered in Hayes [v. Board of Trustees, Police & Firemen's Retirement System, 421 N.J. Super. 43, 47-48 (App. Div. 2011) (reversing the Board's decision and awarding ADR benefits to a police officer, who responded to a call and discovered her younger brother, a fellow officer, was shot in the face and thereafter, learned a gang hit was put out on her life)]."

Further, the Board determined that even if petitioner could satisfy the Patterson standard, he could not establish that incident was an undesigned and unexpected event. As a police officer, petitioner received the "essential elements of police training[,]" including use of his service weapons and the apprehension of suspects, "many of whom are armed." Because petitioner neither fired his weapon nor was in the line of fire, the Board concluded he failed to demonstrate the incident was undesigned and unexpected. Accordingly, the Board concluded petitioner was not entitled to ADR benefits. This appeal followed.

On appeal, petitioner argues the Board's decision was arbitrary and capricious, because it was "based on a fabricated bright-line rule that officers

must always expect dangerous situations with armed suspects" and it is "inconsistent with the Patterson (reasonable person) standard." Petitioner further claims the Board improperly adopted the written exceptions verbatim from the brief filed by the Attorney General on behalf of the Board.

## II.

"Our review of administrative agency action is limited." Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011). Reviewing courts presume the validity of the "administrative agency's exercise of its statutorily delegated responsibilities." Lavezzi v. State, 219 N.J. 163, 171 (2014). For those reasons, "an appellate court ordinarily should not disturb an administrative agency's determinations or findings unless there is a clear showing that (1) the agency did not follow the law; (2) the decision was arbitrary, capricious, or unreasonable; or (3) the decision was not supported by substantial evidence." In re Virtua-West Jersey Hosp. Voorhees for a Certificate of Need, 194 N.J. 413, 422 (2008). "The burden of demonstrating that the agency's action was arbitrary, capricious or unreasonable rests upon the [party] challenging the administrative action." In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006).

"[T]he test is not whether an appellate court would come to the same conclusion if the original determination was its to make, but rather whether the factfinder could reasonably so conclude upon the proofs." Brady v. Bd. of Review, 152 N.J. 197, 210 (1997) (quoting Charatan v. Bd. of Review, 200 N.J. Super. 74, 79 (App. Div. 1985)). "Where . . . the determination is founded upon sufficient credible evidence seen from the totality of the record and on that record findings have been made and conclusions reached involving agency expertise, the agency decision should be sustained." Gerba v. Bd. of Trs., Pub. Emps.' Ret. Sys., 83 N.J. 174, 189 (1980), overruled on other grounds by Maynard v. Bd. of Trs., Teachers' Pension & Annuity Fund, 113 N.J. 169 (1988). That said, appellate courts review de novo an agency's interpretation of a statute or case law. Russo, 206 N.J. at 27.

The PFRS provides for both ordinary, N.J.S.A. 43:16A-6, and accidental, N.J.S.A. 43:16A-7(1), disability benefits. "[A]n accidental disability retirement entitles a member to receive a higher level of benefits than those provided under an ordinary disability retirement." Patterson, 194 N.J. at 43. In Richardson v. Board of Trustees, Police & Firemen's Retirement Systems, 192 N.J. 189, 212-13 (2007), the Court held that a claimant for ADR benefits must prove:

1. that he is permanently and totally disabled;

2. as a direct result of a traumatic event that is

    a. identifiable as to time and place,

    b. undesigned and unexpected, and

    c. caused by a circumstance external to the member (not the result of pre-existing disease that is aggravated or accelerated by the work);

3. that the traumatic event occurred during and as a result of the member's regular or assigned duties;

4. that the disability was not the result of the member's willful negligence; and

5. that the member is mentally or physically incapacitated from performing his usual or any other duty.

The Court defined a "traumatic event" as "essentially the same as what we historically understood an accident to be—an unexpected external happening that directly causes injury and is not the result of pre-existing disease alone or in combination with work effort." Id. at 212.

A petitioner who has suffered a "permanent mental disability as a result of a mental stressor, without any physical impact," must meet an additional requirement to qualify for ADR benefits. Patterson, 194 N.J. at 33. In Patterson, the Court held:

9

The disability must result from direct personal experience of a terrifying or horror-inducing event that involves actual or threatened death or serious injury, or a similarly serious threat to the physical integrity of the member or another person. By that addition, we achieve the important assurance that the traumatic event posited as the basis for an [ADR] pension is not inconsequential but is objectively capable of causing a reasonable person in similar circumstances to suffer a disabling mental injury.

[Id. at 34.]

In Russo, the Court clarified that the objective reasonableness standard is met after a petitioner has experienced a "terrifying or horror-inducing event." 206 N.J. at 33. Nonetheless, we have held that "the diagnostic criteria for PTSD are not identical to the Patterson requirement." Thompson v. Bd. of Trs., Teachers' Pension & Annuity Fund, 449 N.J. Super. 478, 495 (App. Div. 2017), aff'd o.b., 233 N.J. 232 (2018). "[T]he Supreme Court in Patterson . . . did not hold that any employee who obtains a PTSD diagnosis qualifies for accidental disability benefits." Ibid.

The Court has recently summarized a two-part analysis in cases of permanent mental incapacity resulting from "an exclusively psychological trauma." Mount v. Bd. of Trs., Police & Firemen's Ret. Sys., 233 N.J. 402, 426 (2018). Specifically,

> The court first determines whether the member directly experienced a "terrifying or horror-inducing event that involves actual or threatened death or serious injury, or a similarly serious threat to the physical integrity of the member or another person." If the event meets the <u>Patterson</u> test, the court then applies the <u>Richardson</u> factors to the member's application.
>
> [<u>Ibid.</u> (quoting <u>Patterson</u>, 194 N.J. at 50).]

As the Court observed in <u>Russo</u>, "an employee who experiences a horrific event which falls within his job description and for which he has been trained will be unlikely to pass the 'undesigned and unexpected' test." 206 N.J. at 33. Nonetheless, the Court recently clarified in <u>Mount</u> that "the Board and a reviewing court must carefully consider not only the member's job responsibilities and training, but all aspects of the event itself. No single factor governs the analysis." 233 N.J. at 427.

Applying these principles here, we are satisfied the event was not "undesigned and unexpected" as required by <u>Richardson</u>. 192 N.J. at 212. In particular, as the Board correctly concluded, petitioner's "arrest of an armed suspect [fell] within the specified duties of a police officer." <u>Id.</u> at 212-13.

Specifically, petitioner was a ten-year veteran, trained in discharging his service weapon. His duties included making arrests and investigating suspicious

activity. Some of those investigations could be expected to involve the discharging of a service weapon where, as here, the officers were faced with an imminent threat of death or serious bodily injury. There was nothing here that fell outside the scope of petitioner's general duties as a police officer. Petitioner was not placed in a situation where he lacked equipment or training. Rather, given his patrol duties, and his receipt of a dispatch call that the suspect was armed and acting strangely, it was not unreasonable for petitioner to anticipate that shots might be fired.

Having carefully considered petitioner's job responsibilities and training, and the circumstances of the events here, we agree with the Board's decision rejecting the ALJ's legal conclusions was not arbitrary, capricious or unreasonable. In light of our determination, we need not reach whether petitioner experienced a "terrifying or horror-inducing event." Russo, 206 N.J. at 33.

Finally, petitioner fails to direct us to any authority supporting his remaining contention that the Board acted improperly by adopting verbatim the written exceptions set forth in the Attorney General's brief. We have nonetheless considered petitioner's argument, finding it lacks sufficient merit to warrant discussion in our written opinion. R. 2:11-3(e)(1)(E). We simply add

12

the Attorney General, as counsel for the Board, submitted the exceptions to the Division of Pension and Benefits on behalf of the Board. We discern no impropriety in that submission.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-3532-16T2